**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANDREW DAVIES,  | ) |
|  | ) |
|           Plaintiff, | )   Case No.: 2:19-cv-01987-GMN-NJK |
| vs. | ) |
|  | )   **ORDER** |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | ) ) |
|  | ) |
|           Defendant. | ) |

Pending before the Court is the Motion to Dismiss, (ECF No. 6), or in the alternative, Motion to Sever/Bifurcate and Stay Claims, (ECF No. 7),[1] filed by Defendant Government Employees Insurance Company ("Defendant" or "Geico"). Plaintiff Andrew Davies ("Plaintiff") filed a single Response, (ECF No. 9), and Defendant filed a single Reply, (ECF No. 10).

## I.   BACKGROUND

This case arises from an insurance coverage dispute. Plaintiff alleges that on March 29, 2017, he was rear-ended by at-fault non-party driver, Jasmine Rubio-Arroyo ("Rubio-Arroyo"), resulting in serious injuries to Plaintiff. (Compl. ¶¶ 12–15, ECF No. 1-1). Rubio-Arroyo was covered by a USAA policy, and USAA tendered its $25,000.00 policy limit to Plaintiff. (*Id.* ¶¶ 17, 18). Because Plaintiff's medical bills exceeded $25,000.00, Plaintiff submitted a claim with his insurer, Geico, for underinsured motorist (UIM) coverage in the amount of $15,000.00. (*Id.* ¶¶ 16, 19). At the time, Plaintiff believed his UIM benefits to be $15,000.00 based on documentation provided by Geico. (*Id.* ¶¶ 23, 24). However, on December 5, 2017, Defendant offered $24,263.54 in exchange for a full and final release of all claims. (*Id.* ¶ 25). Plaintiff

---

[1] The two motions are identical and request relief in the alternative to one another.

alleges that a day later, Defendant verbally communicated the limits for Plaintiff's UIM coverage to be $100,000.00. (*Id.* ¶ 26). On December 8, 2017, after considering his past and future medical damages and "the irreparable harm caused by the delay in getting necessary medical treatment," Plaintiff sent Defendant a demand for the entirety of his UIM limits. (*Id.* ¶ 27). Defendant subsequently sent correspondence confirming policy limits were $100,000.00, and indicating that its December 5, 2017 offer was based on Defendant's evaluation and investigation. (*Id.* ¶ 28). Plaintiff alleges that Defendant's refusal to pay UIM benefits was "willful, wanton, malicious, reckless, oppressive, and/or fraudulent." (*Id.* ¶ 47).

On October 9, 2019, Plaintiff filed the instant action in Clark County District Court. (*See id.* at 1). Plaintiff's Complaint alleges the following causes of action: (1) breach of contract; (2) violation of Nevada's Unfair Claims Practices Act, NRS 686.310; and (3) breach of the implied covenant of good faith and fair dealing ("bad faith"). On November 14, 2019, Defendant removed this case to federal court on the basis of diversity jurisdiction. (Removal Petition, ECF No. 1). Defendant now moves to dismiss Plaintiff's bad faith and unfair claims practices causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. Dismiss ("MTD") at 5–10, ECF No. 6). Alternatively, Defendant moves to bifurcate said claims and stay them "until the benefits claim is decided." (Mot. Bifurcate and Stay ("Mot. Stay") at 10–13, ECF No. 7).

## II.   LEGAL STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III.  DISCUSSION

Defendant does not move to dismiss Plaintiff's breach of contract claim.  Thus, the Court will not address that claim here.  However, Defendant makes several arguments as to why Plaintiff's bad faith and unfair claims practices causes of action should be dismissed.  The Court addresses these arguments below.

    **A.**    **Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith)**

        *1.*    *prematurity*

Defendant argues Plaintiff's bad faith claim should be dismissed because it is premature, meaning that the Court would have to find Defendant liable under Plaintiff's breach of contract claim before allowing the bad faith claim to proceed. (MTD at 9–10, ECF No. 6).  The Court

disagrees. *See Ahuja v. W. United Ins. Co.*, No. 3:13-cv-00038-MMD, 2013 WL 5316538, at *2–*3 (D. Nev. Sept. 23, 2013) (rejecting this same argument under applicable law); *see also Aiello v. Geico Gen. Ins. Co.*, 379 F. Supp. 3d 1123, 1129 (D. Nev. 2019). "To find otherwise would require a plaintiff to commence two separate lawsuits even if the facts establish that the insurer breached the insurance contract and acted in bad faith within the same factual sequence." *Gildas v. Fin. Pac. Ins. Co.*, No. 2:19-cv-00851-JCM-VCF, 2019 WL 6700196, at *4 (D. Nev. Dec. 9, 2019).

### 2. *genuine dispute doctrine*

Defendant further contends that the parties dispute only the valuation of Plaintiff's UIM claim. (MTD at 6–7). Defendant argues that "[a]s a matter of law, such a dispute is not bad faith under the Genuine Dispute doctrine." (*Id.* at 7). To support this proposition, Defendant cites numerous cases in which the court granted the defendants' motions for summary judgment and dismissed the plaintiffs' respective bad-faith claims. *See, e.g.*, *Pioneer Chlor Alkali Co.*, 863 F. Supp. 1237 (D. Nev. 1994); *Gutting v. Am. Family Fin. Services, Inc.*, No. 2:15-cv-02216-GMN-CWH, 2017 WL 1159722, at *4 (D. Nev. Mar. 28, 2017); *Williams v. Am. Family Mut. Ins. Co.*, No. 2:09-cv-00675-KJD-VCF, 2012 WL 1574825 (D. Nev. May 2, 2012). But this case does not come before the Court on a motion for summary judgment. Rather, Defendant moves to dismiss Plaintiff's bad faith claim at the onset of litigation.

There is no evidence before the Court regarding the pre-litigation dispute between Plaintiff and Defendant. Therefore, the Court cannot yet say whether that dispute is genuine. *See Tracey v. Am. Family Mut. Ins. Co.*, No. 2:09-cv-01257-GMN-PAL, 2010 WL 3613875, at *2, *3 (D. Nev. Sept. 8, 2010) (noting that "a bad faith claim should be dismissed on *summary judgment* if the defendant demonstrates that there was a genuine dispute as to coverage[,]" and denying summary judgment to the insurer because the evidence before the court suggested the

insurer's investigation was unreasonable) (emphasis added) (citations omitted). Ruling on Plaintiff's claim under the genuine dispute doctrine is premature at this stage in the litigation.

### 3. *failure to state a claim*

Defendant argues that Plaintiff fails to state a claim upon which relief can be granted because the Complaint does not sufficiently allege that Defendant knew or recklessly disregarded that it had no reasonable basis to deny Plaintiff's claim. (*See* MTD at 5–6).

Under Nevada law, an insurer breaches the duty of good faith when it refuses "without proper cause to compensate its insured for a loss covered by the policy." *U.S. Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975). An insurer is without proper cause to deny a claim when it has an "actual or implied awareness" that no reasonable basis exists to deny the claim. *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986). An unreasonable delay in payment can also constitute bad faith. *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996) ("[T]his court has addressed an insurer's breach of the implied covenant of good faith and fair dealing as the unreasonable denial or delay of payment of a valid claim"). However, an "insurer does not act in bad faith merely because it disagrees with the claimant's estimation of his injuries or delays paying out benefits until it receives relevant documents or expert opinions." *Igartua v. Mid-Century Ins. Co.*, 262 F. Supp. 3d 1050, 1055 (D. Nev. 2017) (holding the insurer acted reasonably in handling an insured's claim, despite delaying payment several years, because there was a reasonable dispute about the extent of the insured's injuries and whether those injuries were caused by the accident).

Here, Plaintiff contends that Defendant's refusal to "evaluate and/or pay Plaintiff's claims was done so in the absence of a reasonable basis for denying such benefits under the policy, and was done with . . . knowledge and/or reckless disregard of the lack of a reasonable basis for denying the claims." (Compl. ¶ 44, ECF No. 1-1). More specifically, Plaintiff alleges he believed the UIM policy limits to be $15,000.00 pursuant to Geico's March 15, 2017

declarations page, and Geico's April 17, 2017 correspondence listing coverages on the policy. (*Id.* ¶ 23). In November 2017, Plaintiff made a claim with Defendant for Plaintiff's UIM benefits in the amount of $15,000.00, "which demand included the recommendation for the future initial set of Transformational Epidural Injections at L3-L4 through L5-S1 along with Plaintiff's past medical billing and records which was approximately $44,263.54 at the time." (*Id.* ¶ 24). On December 5, 2017, Defendant offered $24,263.54 in exchange for a full and final release of all claims. (*Id.* ¶ 25). On December 6, 2017—more than eight months after initially representing that the UIM policy limits were $15,000.00—Defendant then verbally communicated the policy limits were actually $100,000.00. (*Id.* ¶ 26). On December 8, 2017, upon "considering the past medical bills, future medical treatment, and the irreparable harm caused by the delay in getting necessary medical treatment," Plaintiff rejected the December 5, 2017 offer and demanded the entirety of the UIM policy limits. (*Id.* ¶ 27). On December 15, 2017, Defendant sent correspondence confirming policy limits were $100,000.00, and indicating that its December 5, 2017 offer was based on Defendant's evaluation and investigation. (*Id.* ¶ 28). Accepting the Complaint's factual allegations as true and construing the pleadings in the light most favorable to the nonmoving party, as the Court must do at this stage, the Court finds Plaintiff sufficiently alleges a claim for bad faith.[2] Defendant's Motion to Dismiss is denied as to this claim.

### B. Unfair Claims Practices Act

Pertaining to Plaintiff's claim under Nevada's Unfair Claims Practices Act, Defendant argues that Plaintiff's allegations "are legal conclusions in the language of the statute." (MTD at 7). Nevada's Unfair Claims Practices Act, NRS 686A.310, deals with unfair practices in

---

[2] While Defendant's Reply maintains Defendant increased the policy's UIM limits in December 2017 when Defendant was "unable to locate the signed waiver form required under [NRS] 690.020(1)," the Court cannot consider those facts on a motion to dismiss because they do not appear in the Complaint. (*See* Reply at 2, 5–6, ECF No. 10).

settling claims and liability of the insurer for damages.  This statute designates certain insurance company activities as unfair practices and allows for a private right of action by an insured against the insurer for a violation of the statute. *See Hart v. Prudential Prop. & Cas. Ins. Co.*, 848 F. Supp. 900, 903 (D. Nev. 1994).  "Unlike a cause of action for bad faith, the provisions of NRS 686A.310 'address the manner in which an insurer handles an insured's claim whether or not the claim is denied.'" *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010) (quoting *Schumacher v. State Farm Fire & Cas. Co.*, 467 F. Supp. 2d 1090, 1095 (D. Nev. 2006)).

Here, the allegations asserting violations of NRS 686.310(1)'s subsections (b) through (f), are a mere recital of the statute's language. (*See* Compl. ¶¶ 34–38).  This is not enough to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678–79.  However, looking at the allegations that are incorporated by reference, the Court finds Plaintiff sufficiently asserts a claim under NRS 686.310(1)(a), which provides that "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue," is an unfair practice. NRS 686.310(1)(a).  Indeed, Plaintiff alleges that in April 2017, Defendant's correspondence listed Plaintiff's UIM benefits to be at $15,000.00. (Compl. ¶ 23).  Eight months later, in December 2017, Defendant confirmed "Plaintiff's underinsured motorist coverage to actually be $100,000.00." (*Id.* ¶¶ 26, 28).  Thus, Plaintiff asserts that Defendant "misrepresented to Plaintiff pertinent facts or insurance policy provisions relating to the coverage at issue, as prohibited by NRS 686.310(1)(a)." (*Id.* ¶ 33).

Accordingly, Defendant's Motion to Dismiss Plaintiff's second cause of action for unfair claims practices is granted in part and denied in part.  Plaintiff adequately alleges a claim for relief, but only to the extent Plaintiff alleges a violation of NRS 686.310(1)(a).  Plaintiff is granted leave to amend as he may be able to plead additional facts establishing violations of NRS 686.310(1)(b) through (f).

### D. Motion to Bifurcate and Stay

Defendant submits that "the court's interest in judicial economy warrants the severing and staying the extra-contractual claims from the potentially dispositive contract claim here." (Mot. Stay at 10, ECF No. 7). Defendant contends bifurcation is the appropriate remedy in insurance bad faith cases in order to avoid juror confusion and prejudice. (*Id.* at 11).

Federal Rule of Civil Procedure 42(b) authorizes courts to order a separate trial of any claim when separation is in the interest of judicial economy, will further the parties' convenience, or will prevent undue prejudice. Fed. R. Civ. P. 42(b). The decision to bifurcate is within the court's discretion. *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982). Bifurcation is particularly appropriate when resolution of a single claim or issue could be dispositive of the entire case. *Drennan v. Maryland Cas. Co.*, 366 F. Supp. 2d 1002, 1007 (D. Nev. 2005). "However, bifurcation of the trial does not necessarily require bifurcation of discovery." *Id.*

The Court finds no reason to bifurcate or stay Plaintiff's extra-contractual claims at this stage. Plaintiff's claims are intertwined, therefore, separating and staying at this time would needlessly extend the process and waste judicial resources managing two phases of discovery. Moreover, bifurcating the claims for trial would cause the parties to present much of the same evidence twice, make many of the same arguments twice, and pay the cost of litigation twice. Any concerns about confusion or prejudice on the jury's part can be addressed through jury instructions, opening statements, and closing arguments. *Tracey v. Am. Family Mut. Ins. Co.*, No. 2:09-cv-01257-GMN-PAL, 2010 WL 3613875, at *7 (D. Nev. Sept. 8, 2010). Accordingly, Defendant's Motion to Bifurcate and Stay, (ECF No. 7), is denied.

///

///

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 6), is **GRANTED in part and DENIED in part**, consistent with the foregoing.

**IT IS FURTHER ORDERED** that Defendant's Motion to Sever/Bifurcate and Stay Claims, (ECF No. 7), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff is **GRANTED** leave to amend. Plaintiff shall have twenty-one (21) days from the date of this Order to file an amended complaint. Failure to file an amended complaint by this date shall result in the Court dismissing with prejudice Plaintiff's second cause of action as it pertains to NRS 686.310(1)(b) through (f).

**DATED** this __31__ day of August, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court